Arthur G. B. **METCALF**, Petitioner, Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent, Appellee.

No. 5526.

United States Court of Appeals
First Circuit.

Heard Oct. 8, 1959.

Decided Nov. 4, 1959.

John B. Dolan, Boston, Mass., for petitioner.

Carter Bledsoe, Atty., Dept. of Justice, Washington, D. C., with whom Howard A. Heffron, Acting Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., were on the brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a petition for review of a decision of the Tax Court refusing to redetermine a deficiency in taxpayer's income tax liability for the year 1951. The sole question is whether, and to what extent, a taxpayer is entitled to deduct, as alimony, certain payments made by him to his divorced wife during the taxable year. Sections 22(k) and 23(u), Internal Revenue Code of 1939, 26 U.S.C. §§ 22(k), 23(u).[1]

Section 23(u) allows as a deduction, "in the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year." Section 22(k) includes in the gross income of a divorced wife payments made to her by her former husband in discharge of a legal obligation "imposed upon or incurred by such husband under such [divorce] decree or under a written instrument incident to such divorce * * *. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband."

The facts were stipulated. In July, 1950, taxpayer's wife filed a libel for divorce. In September a decree *pendente lite* for custody of the minor children and for support in the amount of $150 a week was entered in favor of the wife. On November 10, 1950, in contemplation of an impending divorce, an agreement was executed by the parties[2] providing for a division of their property, for the wife's custody of the children, and for a continuance of the obligation of taxpayer to pay $150 a week to the wife for the support of herself and the children. On November 13 the Probate Court entered a decree nisi of divorce which conformed to the agreement (although not mentioning it), but which omitted certain details important to the instant proceeding. This decree became final six months later. On June 6, 1951, the wife (as we shall continue to refer to her for the sake of convenience) petitioned for an increase in the weekly payments, and on November 23, 1951, an order was entered increasing the weekly payments to $175.

None of the decrees made any allocation or apportionment of the weekly payments between support of the wife and support of the children. Neither did the agreement, in so many words. But the agreement did specify that the parties had five minor children. It provided that as each child reached the age of twenty-one years "or dies before reaching such age or marries or becomes self-supporting," the weekly payments would be reduced by $25. It further provided that upon the remarriage of the wife there would be a reduction of $25. The Tax Court held that this was an obvious per capita arrangement, and that the fair intent of the agreement was to fix $125

1. A protective action with respect to the wife is pending awaiting final decision of the husband's case, since the payments are includible in her gross income if they are deductible by the husband.

2. Each party actually contracted with a trustee for the other party. This is the customary practice in Massachusetts, since a husband cannot contract directly with his wife. Such agreements are fully binding. Schillander v. Schillander, 307 Mass. 96, 29 N.E.2d 686.

of the $150 as payable for the support of the children, and therefore not deductible by taxpayer. It further held that the decree of November 23, 1951, did not change this.

We agree with the Tax Court. The cases on this subject are not in such conflict as has been suggested. In Budd v. Commissioner, 6 Cir., 1947, 177 F.2d 198, the agreement provided, in separate paragraphs, that the husband would pay his divorced wife $500 a month for the support of herself and their son; that after the death or majority of the son she would receive $300 a month for her support, for so long as she remained unmarried; and that if she remarried she would receive $200 a month for the son. The court held that during the period she was receiving $500 a month, $200 was adequately "earmarked" for the son even though the other provisions had not become operative. In Deitsch v. Commissioner, 6 Cir., 1957, 249 F.2d 534, the agreement was similar to the one considered in Budd in that it made provision for a reduction upon remarriage, and dissimilar in that it provided that one-half the payments should cease upon the majority of the elder child, and that all payments should cease upon the majority of the younger child. The court distinguished Budd for this reason and held that no amount was adequately "earmarked" for the children. In view of the remarriage provision, this conclusion seems sound. Some of the language of the court must be read with caution, however, in view of the fact that the court expressly reaffirmed the Budd case.

In Eisinger v. Commissioner, 9 Cir., 1957, 250 F.2d 303, certiorari denied, 1958, 356 U.S. 913, 78 S.Ct. 670, 2 L.Ed. 2d 586, the husband agreed to pay $125 a week for his wife, and she agreed to support the two children. Payments were to be reduced by $31.25 as each child attained majority, or died. If the wife remarried, the payments were to cease, and in lieu thereof the husband was to pay to the wife $31.25 per child for their support. The court stated that it "disapproved" Deitsch, and held that one-half the payments were sufficiently fixed as for the support of the children. There would seem to have been no reason for the court to have disapproved Deitsch, at least in terms of its result. The Deitsch case was clearly distinguishable, the more so in view of its reaffirmance of Budd, which considered an agreement almost exactly like the Eisinger agreement. See also Mandel v. Commissioner, 7 Cir., 1950, 185 F.2d 50.

Analysis of all of the appellate cases supports the instant decision of the Tax Court, with the possible exception of certain language in Weil v. Commissioner, 2 Cir., 1957, 240 F.2d 584, certiorari denied 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909, relied upon by taxpayer. The provisions of the agreement in that case were unusual, and complicated. There could be no disagreement with the court's conclusion that no portion of the payments was definitely marked for the children, or with the principle that the agreement is not to be searched "with a fine-tooth comb to discover * * * [t]he fortuitous or incidental mention of a figure * * *" (240 F.2d at page 588). Nor, in the context of that case, do we quarrel with the statement that "the wife must have no independent beneficial interest" in the amounts payable to the children, having in mind that the agreement there provided for continued payments to the wife in the full amount even when the children were no longer being supported. But if, as may be indicated by the per curiam opinion in the later, and almost identical, case of Hirshon's Estate v. Commissioner, 2 Cir., 1957, 250 F.2d 497, 498, the Second Circuit intended a broad interpretation of this language, we cannot feel that Congress, in using the phrase "payable for the support of minor children," intended such rigidity of restriction. Where a home is run as a unit, as is contemplated in the case of a parent having custody of minor children, it is highly impractical, if not impossible, to segregate every expense from day to day so that the parent has "no independent beneficial interest therein." We believe the proper

rule to be that it is sufficient if the parties, by their agreement, have shown a clear intention to distinguish in the periodic payments between what is paid to the wife because of her undertaking to support the children, and what is for herself, independent of that undertaking. In the case at bar, which is almost identical with Budd v. Commissioner, and Eisinger v. Commissioner, supra, we find this readily apparent.[3]

■ Alternatively, taxpayer claims that the agreement was superseded by the decree or decrees of the Probate Court, and is, accordingly, not presently controlling. Whether an agreement remains in force after a decree is, again, a question of intent. Freeman v. Sieve, 323 Mass. 652, 84 N.E.2d 16. The burden on this issue is upon taxpayer, and it is a peculiarly heavy one, as the Massachusetts law in this regard is weighted in favor of the wife. The parties cannot, by their agreement, limit the right of the probate court to order, from time to time, what it deems appropriate for alimony or support of minor children. Wilson v. Caswell, 272 Mass. 297, 172 N.E. 251. This principle is, in essence, a one-way street. The court has no complementary power to relieve the husband of his obligations under the agreement. Schillander v. Schillander, 307 Mass. 96, 29 N.E.2d 686. True, it might make its order for alimony and support less than the amount provided for in the agreement, but that would only affect the extent to which the wife could rely upon contempt proceedings for enforcement. It would not bar an independent action upon the agreement. Freeman v. Sieve, supra. Under these circumstances it is not lightly to be presumed that a decree, ephemeral in that it could be revised

downward at any time, was accepted by a wife as a substitute for an existing agreement. Taxpayer argues that it was inconsistent with the agreement for the wife to ask for a larger payment. But this overlooks the fact that she had the clear right to do so, and retain the agreement as well. We concur with the Tax Court that the agreement here was not extinguished.

Section 22(k) reads in the disjunctive. Since throughout the taxable period $125 weekly was payable for the support of the children under the terms of a written instrument incident to a divorce, the decision of the Tax Court must be affirmed.

A judgment will be entered affirming the decision of the Tax Court.

---

3. It may be noted that taxpayer, originally, indicated that this was his own understanding of the agreement. In his original return, filed March 7, 1952, he treated $125 of the $150 payments as paid for the support of his minor children, and claimed only $25 as deductible from his gross income under § 23(u) as alimony. However, perhaps piqued by the fact that the court had increased his

obligations by $25 commencing November 24, 1951, he claimed the entire $175 payments as taxable to the wife, and none of it to himself. It requires no great study to see that the effect of this, if successful, would be to decrease the net amount available to the wife for the support of herself and the children after November 23, 1951, rather than to increase it.